UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HERBERT O. COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 05 C 1237 |
| | ) | |
| LOUIS JONES ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motion of Defendant Louis Jones Enterprises, Inc. ("LJE") for summary judgment on the complaint of Plaintiff Herbert Collins. For the reasons set forth below, the motion is granted.

**BACKGROUND**

LJE is a construction labor company; Collins is a former employee. From September 2002 to April 2004, he worked on a job site at the University of Chicago campus. Other companies also worked on and provided labor for this project, including Broadway Consolidated, Power Construction, and Stevenson Crane. Over 14 of the 19 months that he worked for LJE, Collins contends that he was subjected to four incidents of sexual harassment from other men working on the job site. Three involved a man

named Richard Weidman; the other a man named Bill Meyer. Neither Weidman nor Meyer worked for LJE; Weidman worked for Broadway Consolidated and then Power Construction, and Meyer worked for Stevenson Crane. Collins neither reported to them nor worked in close proximity to them on a regular basis.

The first incident occurred in March 2003; according to Collins, Weidman approached him from behind and grabbed one of Collins' buttocks. Collins responded by telling Weidman that he did not appreciate what Weidman had done and that he would physically harm Weidman if he did it again.

Nine months passed before Collins had another encounter with Weidman. In late January 2004, Weidman touched Collins' side from behind when they passed each other on some stairs. Two months later, in March, Weidman made a comment to Collins referencing Collins' buttocks. A few days later came the incident with Meyer. Collins contends that Meyer ran his hand across Collins' buttocks and made reference to men having sex with other men.

Collins told the supervising foreman to whom he reported about the incidents when they occurred.[1] However, no action was taken until April 5, 2004, when Collins alerted Barbara Jones, a human resources officer for LJE, about the events. At that

---

[1] For the first and third incident with Weidman, the foreman was Larry King; For the second Weidman incident and the run-in with Meyer, the foreman was Tony Nixon.

time, Jones arranged for two meetings on April 12 with Collins. The first was to discuss issues that Tony Nixon had with Collins' work performance, in particular his ability to get along with a coworker named Chester Steenes; the second was to investigate the complaints he had with the events detailed above. During the first meeting, Collins and Steenes were informed that if they could not get along with each other on the job, they were both in danger of being fired. Though in his characterization of this evidence Collins implies that he was admonished to cooperate with Weidman and Meyer, the deposition testimony upon which he relies contains no indication that he was told to get along with anyone other than Steenes. At the conclusion of that meeting, Collins resigned from his job with LJE, so the second meeting never took place.

Collins filed the instant suit in March 2005, alleging unlawful discrimination on the basis of sex and retaliation in violation of Title VII. The parties have completed discovery, and LJE now moves for summary judgment on the entirety of the complaint.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine

issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial. Id. The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

## DISCUSSION

**A. Sex Discrimination**

A plaintiff seeking to establish Title VII liability can proceed either via the direct method of proof or the indirect method. See Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1107 (7th Cir. 2004). Collins has not alleged that he has direct evidence of discrimination against him on the basis of his sex, i.e., evidence that would show discrimination against him as a man without inference or presumption.

See Rhodes v. Illinois Dep't of Transp., 359 F.3d 498, 504 (7th Cir. 2004). Nor has he shown a "convincing mosaic" of circumstantial evidence pointing directly to unlawful animus on the part of LJE. See Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003). Thus, to make out his prima facie case, Collins must proceed via the indirect burden-shifting method of McDonnell-Douglas v. Green. 411 U.S. 792, 93 S. Ct. 1817 (1973).

In a case of sex discrimination, a prima facie showing consists of four elements. See, e.g., Whittaker v. Northern Illinois Univ., 424 F.3d 640, 647 (7th Cir. 2005). First, Collins must establish that he is a member of a protected class. See id. It is well-settled that Title VII protects men from discrimination on the basis of their sex. See, e.g., Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 118 S. Ct. 998, 1001 (1998). Next, Collins must show that he was meeting LJE's legitimate expectations. See Whittaker, 424 F.3d at 647. Next, Collins must show that he was subject to an adverse employment action. Id. He alleges that he was subjected to a hostile work environment. To properly establish that he was subjected to a hostile work environment, Collins must demonstrate that he was the object of unwelcome verbal or physical conduct of a sexual nature, that the conduct was severe or pervasive enough to significantly alter the terms and conditions of his employment, that the conduct was directed at him because of his sex, and that there is a basis to hold LJE liable for the

conduct of Weidman and Meyer.  See, e.g., Harris v. Forklift Systems, Inc., 510 U.S. 17, 22, 114 S. Ct. 367, 370-71 (1993); Whittaker, 424 F.3d at 645; Johnson v. Hondo, Inc., 125 F.3d 408, 415 (7th Cir. 1997).  Lastly, Collins must show that he was treated less favorably than similarly situated employees not in the same protected class, i.e., female employees at LJE.  See Whittaker, 424 F.3d at 647.

LJE takes issue with Collins' ability to demonstrate that Weidman and Meyer behaved as they did because of his sex as well as what they perceive to be a lack of severity or pervasiveness of the hostile behavior.  We examine each of these arguments in turn.

In opposite-sex discrimination cases, it is presumed that harassers are heterosexual, so sexual behavior would be directed only to members of the opposite sex.  See Oncale, 523 U.S. at 80, 118 S. Ct. at 1002.  Courts and juries infer, in the absence of evidence that a party is a so-called "equal opportunity harasser," that only members of the opposite sex are subjected to the harasser's advances, making the different treatment because of their sex.  See id.; Holman v. Indiana, 211 F.3d 399, 403-05 (7th Cir. 2000).  In the case of same-sex sexual conduct, a plaintiff can support an inference that members of the harasser's sex were subjected to discrimination on the basis of their sex if he or she can show that the harasser is homosexual, that the harasser has a general hostility to the presence of members of the same sex in the

workplace, or that the harasser treated members of his or her sex comparatively worse than members of the opposite sex. See Oncale, 523 U.S. at 80, 118 S. Ct. at 1002.

Here, Collins has not provided evidence that either Weidman or Meyer was homosexual. Neither has he provided any evidence that Weidman or Meyer harbored general hostility toward men in their workplace. With regard to the final avenue open to Collins, he has not shown that Weidman and Meyer treated women any better than they treated men at their work site. Collins counters this last point by asserting that there were no women working at the construction site. Even assuming that this is true, if it is the only argument available to Collins, it will defeat his prima facie case on the fourth element because he will not be able to demonstrate a similarly situated employee outside of his protected class who was treated more favorably than he. Accordingly, we agree with LJE that Collins has not established a triable issue of fact on the question of whether he was subjected to a hostile work environment because of his sex.

LJE's second argument, which pertains to the severity or pervasiveness of the conduct alleged, is a closer call. As the Seventh Circuit has stated, there is no magic number of incidents that can be used to determine when conduct is pervasive. See Hostetler v. Quality Dining, Inc., 218 F.3d 798, 808 (7th Cir. 2000). Moreover, even a single incident can be enough to establish a hostile work environment if it is

sufficiently beyond the bounds of acceptable workplace behavior. Smith v. Sheahan, 189 F.3d 529, 533 (7th Cir. 1999).

The conduct Collins attributes to Weidman consists of three events: one involving a brief intimate touch, one involving a brief non-intimate touch, and one involving comments that could be construed as sexual in nature. Even taken together, these instances are not enough to be considered severe for Title VII purposes. In fact, Weidman's conduct is strikingly similar to that deemed not actionable as a matter of law in Adusumilli v. City of Chicago. 164 F.3d 353, 361-62 (7th Cir. 1998). In Adusumilli, the harassing coworker touched the plaintiff briefly on the buttocks, arm, and fingers once each, and made a comment about low-neck tops in her presence. The court concluded that no reasonable factfinder could construe these actions as anything more than teasing, offhand comments, and minor isolated incidents. See id. at 361. Collins has provided no convincing reason why his case is any different.

Meyer's conduct differs from Weidman in that it consisted of an intimate touch accompanied by comments directly referencing sexual acts. While this combination safely qualifies Meyer's actions as more severe than Weidman's, they are still not enough to trigger Title VII. Again, the conduct described is analogous to that previously found not actionable. See McPherson v. City of Waukegan, 379 F.3d 430, 435 (7th Cir. 2004). In McPherson, the Seventh Circuit concluded that a male

supervisor's act of pulling back a female employee's tank top to look at her breasts after asking her the color of her undergarments, though distasteful and crude, was not severe enough to cause a hostile work environment. See id. Though the supervisor in McPherson later crossed the line into hostile behavior, there is no evidence in this case of any repeat or worsened behavior from Meyer. As a result, we conclude that Collins' run-in with Meyer is not sufficient to establish a hostile work environment.

**B. Retaliation**

To prove his claim for retaliation, Collins must show that LJE took adverse action against him because he engaged in some statutorily protected activity. See Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003). The essence of Collins' retaliation claim is that LJE took adverse action by constructively discharging him from his employment. Constructive discharge can be an actionable adverse action in appropriate circumstances, but they are not present here. The conditions that would amount to constructive discharge are even more beyond the pale than those that would establish a hostile work environment. See Tutman v. WBBM-TV, Inc., 209 F.3d 1044, 1050 (7th Cir. 2000). As described above, the incidents of which Collins complains do not establish a hostile work environment, so they cannot be construed as so egregious that they would force a reasonable person to resign. Consequently, summary judgment is appropriate on the retaliation claim as well.

## CONCLUSION

Based on the foregoing analysis, LJE's motion for summary judgment in its favor on the entirety of the complaint is granted.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated:  February 16, 2006